LUIS E. SOLER, INC., Plaintiff and Appellant, *v.* FERNANDO PONT FLORES, Defendant and Appellee.

No. 11706. Argued December 6, 1955.—Decided January 18, 1956.

*Luis Ríos Algarín* for appellant. *F. Ponsa Feliú* for appellee.

MR. JUSTICE MARRERO delivered the opinion of the Court.

The record does not show since when or by virtue of what contract the corporation Hotel Palace, Inc.,[1] is or was the lessee of a two-story building located at 155 Tetuán Street, in San Juan. It does show, however, that the Hotel sub-leased the right wing of the ground floor, facing the building, to Fernando Pont Flores, and the left wing to Luis E. Soler, Inc;[2] that the persons who at present constitute the heirs of the former owner of the building assigned it to plaintiff by virtue of a lease contract, entered into between them by public deed executed February 14, 1954; that one year and four days later—February 18, 1955—Soler filed an unlawful detainer proceeding against Pont Flores in the Superior Court, San Juan Part; that after a trial on the merits, the complaint was dismissed; and that plaintiff appealed to this Court from the judgment rendered.

In the complaint filed, Soler alleges in synthesis that he is the lessee "and as such he is also usufructuary" of the house located at 10 Tetuán Street, in San Juan;[3] that defendant occupies the premises on the building's right wing, facing the building; that on constituting itself as "usufructuary" of the property described, plaintiff "served on defendant written notice on March 11, 1954, explaining the intention and necessity of plaintiff to occupy the entire house for its own business and, therefore [that] it would not renew the existing contract between defendant and the property owners or plaintiff's lessors;[4] that the term of the lease has

---

[1] Hereafter we shall refer to the corporation Hotel Palace, Inc., merely as "the Hotel."

[2] From now on we shall refer to the corporation Luis E. Soler, Inc., merely as "Soler" or as "plaintiff."

Soler has been in possession of the premises aforementioned since 1946, and Pont Flores, as we presume, since November 1, 1952.

[3] During the trial it was clearly stated that the building's new number is 155.

[4] The record does not reveal the existence of any kind of contract between the defendant Pont Flores and the owners of the property.

expired; that plaintiff wants to withdraw the property from the rental market in good faith in order to devote it to a business of its own"; and "that, notwithstanding the fact that defendant has been requested to vacate, he continues to occupy the property, although no contractual relation exists between him and plaintiff." See 17 L.P.R.A. §§ 181–214 and 32 L.P.R.A. §§ 2821–2838.

Defendant answered admitting that he occupies the premises described but denying the other essential facts of the complaint and alleging, as a special defense, that the complaint does not state facts sufficient to constitute a cause of action. The suit went to trial.

Plaintiff's evidence consisted of the testimony of its President, Luis E. Soler, tending to show that plaintiff needed the premises in question in order to extend its travel agency business; of the public deed already mentioned by virtue of which the entire building is leased to Soler; and of a letter sent by plaintiff to defendant on March 11, 1954, informing him that ". . . against my fervent and sincere wishes, I am forced to terminate the month-to-month sublease you had on the ground floor (right entrance) (sic) of the premises described, and pray you to begin taking the proper measures for the transfer . . . of your business somewhere else." Defendant's evidence consisted of the copy of a private lease contract entered into between the Hotel, Pont Flores and Soler on November 15, 1952,[5] and of Juan González' testimony,[6] tending to show that Soler's

---

[5] By virtue of that private contract the Hotel, "as lessee . . . of the owner of the real property, heirs of Mrs. Juana Powers de Cortés" leases to Pont Flores the premises on the right-hand side of the ground floor' facing building No. 155 Tetuán Street in this city. In the contract's third clause it is stated that "it is an essential condition of this contract that lessee Mr. Fernando Pont Flores should assign to Luis E. Soler, Inc., the room at the back of the office of the firm and that such room will be included in the lease contract entered into between Luis E. Soler, Inc. and the Hotel Palace, Inc." This contract shall have a month-to-month term beginning on November 1, 1952.

[6] The parties stipulated moreover that, should Wallace Carrillo be called to testify for the defendant, he would testify the same as González.

apparent purpose was to lease the upper floor of the building.
 Soler urges in the first place that the lower court erred in concluding (1) "that there is no evidence that the contract between defendant and his lessor Hotel Palace, Inc., has been rescinded or in any way ended; nor is there any evidence that the lease contract between the owners of the building and Hotel Palace, Inc., has expired." The words on which this assignment is based appear in the third paragraph of the opinion delivered by the trial court. The present case centers largely, if not fundamentally, on the evidence of whether or not a lease contract exists between the Hotel and the owners of the building.

The case of *Galiñanes Hnos.* v. *Superior Court, Universal Furniture Co., Inc., Intervener*, 77 P.R.R. 836, bears a certain similarity to the case at bar. In *Galiñanes* the question involved was, as we stated in the first paragraph of the opinion, ". . . whether a lessee may evict his sublessee whenever he needs in good faith the leased premises to expand his business." We said in the course of the opinion that:

"Since we are concerned with a transmissible right, 'the sublease is a new lease entirely independent of the original lease.' 10 Manresa 520 (ed. cit.) [fifth]. Therefore, when the lessee becomes a sublessor, he has part of the owner's property right which has been alienated in his favor and may convey that part of the property right to a sublessee *as long as his contract is in force. What terminates the partial conveyance of the property right created by the lease is the termination of the contract. Upon termination of the contract between the sublessor and the sublessee, the sublessor may assert against the sublessee all property rights acquired by him from the ownerlessor under the original contract. This being so, he has the right to assert against the sublessee all the owner's rights to the use and enjoyment of the thing, since such rights are alienated to him.*

"That is why § 22 of Act No. 464 of April 25, 1946, as amended by Act No. 201 of May 14, 1948, which contains the definitions of the terms employed therein, in providing that *'proprietor'' and "owner" include any* landlord, owner, lessor, *sublessor*, administrator, natural or artificial person, manager and attorney *for the purpose of administration of one or more rental properties,'* is full of juridical sense, . . . That is why § 12–F of the Reasonable Rents Act, incorporated by Act No. 201 of May 14, 1948, provides that *'The involuntary extension prescribed in Section 12 shall be equally applicable to subleases during the time in which the lessee is in possession of the premises,'* identifying the lease and the sublease as to their juridical effects, in the relations between owner-lessor and lessee, and lessee-sublessor and sublessee." (Italics ours.)

So then, there is no doubt that a lessee who is also a sublessor may file an action of unlawful detainer against the sublessee, requesting the latter to vacate the property he occupies. As we said in *Simonpietri* v. *Blanco; Lippitt & Simonpietri*, 74 P.R.R. 499, 505, ". . . Insofar as the sublessee is concerned, he occupies in connection with the sublessor the same position that the lessee occupies regarding the lessor. . ."

 Here, however, the evidence does not show defendant to be Soler's sublessee. It does not show either that Soler collected any money from Pont Flores for the latter's use of the premises. But the fact that no contractual relation existed between Soler and defendant does not bar the filing of an unlawful detainer action.

We have indicated that plaintiff's evidence tended to show that the corporation was in possession of the building by virtue of a lease contract entered into by public deed between it and the present owners of the property; that plaintiff needed the premises in question to extend its travel agency business; and that it duly notified defendant of its desire to have the premises vacated. Likewise, plaintiff's evidence tended to show that it had requested the premises

in good faith [7] and that it did not intend to sublease any part of the building. Defendant's evidence, as we have indicated, merely tended to show that his possession was legal by virtue of a lease contract previously entered into between him and the Hotel, and that plaintiff intended to sublease the building's second floor.

Although, according to § 12 of Act No. 464 of April 25, 1946 (Sess. Laws, p. 1326), as amended by Act No. 201 of May 14, 1948 (Sess. Laws, pp. 574, 578)—17 L.P.R.A. § 192 [8]—"the lease contract shall, on the day of expiration agreed upon therein, be compulsorily extended by the lessor at the option of the tenant or lessee," it could be presumed that the lease contract which the Hotel had previously entered into with defendant was still in force, and therefore, that the sublease contract by virtue of which defendant was in possession was also in force, plaintiff's evidence destroyed such presumption. In view of this situation, it was incumbent on defendant to show that his possession was legal either because the contract with the Hotel was still in force and therefore, his contract was also in force, or by any other means. Defendant did not offer any such evidence. Eviction, therefore, was proper.

The case of *Ruiz v. Licha*, 64 P.R.R. 765, is very similar to the case at bar. It was stated therein that "The plaintiff herein leased . . . certain premises located on the first floor of a house in San Juan which were divided into two

---

[7] Section 12-A of Act No. 464 of 1946, as amended by Act No. 201 of 1948 (pp. 574, 580), provies that:

"As exceptions to the provisions of the preceding section, the lessor may refuse the extension of the lease contract and, consequently, commence unlawful detainer proceedings only in the following cases:
" . . . . . . .

"7. Whenever he needs for himself, in good faith, the commercial or business premises . . ."

[8] See *Heirs of Pérez v. Gual*, 75 P.R.R. 361; *Roselló Hnos. v. Figueroa*, 74 P.R.R. 403; *Torres v. Biaggi*, 72 P.R.R. 813; *Vidal v. District Court*, 71 P.R.R. 544; *Díaz v. Morales*, 71 P.R.R. 648; *Ocasio v. District Court*, 70 P.R.R. 552; *Pérez v. District Court*, 70 P.R.R. 624; *Rodríguez v. Álvarez*, 70 P.R.R. 932.

portions by a partition. The former lessee had sublet one of the two subdivisions to the defendant herein. As soon as the plaintiff obtained his lease, he served notice thereof on the defendant and advised him that he could continue to occupy the subleased premises as theretofore, provided he agreed to pay rent at the monthly rate of $100 instead of $75 which he formerly paid." Ruiz filed a complaint in unlawful detainer at sufferance alleging "that the defendant expressly refused to accept the new conditions and continued to withhold possession of said premises without paying any rent or charge and without holding any contract of sublease with the plaintiff." The case was heard and the trial court rendered judgment dismissing the complaint. On appeal, the judgment was reversed and the case remanded for further proceedings. We decided that "the defendant admits that the plaintiff has been a lessee of the premises . . . ; that the plaintiff duly notified him of the lease, advising him at the same time of the conditions for the making of a new contract; that the defendant refused to accept those conditions and continued to withhold the possession of the premises, *without having entered into any contract with the plaintiff and without paying any rent or charge therefor.* The defendant has not set up any plea which might be considered as an attack upon the title of the lessor or as a claim of right in the real property involved. *He admits that he has no right whatsoever to continue in the possession and employment of the premises occupied by him . . .*

" . . . it is unquestionable that by virtue of said contract the lessee acquires the right to enjoy the property *and to demand the eviction therefrom of all persons who, without holding any title to the possession of the premises, seek to continue occupying the same in violation of the right of the lessee.*" (Italics ours.)

Notwithstanding the similarity between the case at bar and *Ruiz* v. *Licha, supra,* they are distinguishable. In the

latter case, sublessee openly admitted plaintiff to be the lessee of the premises in question, while in the instant case defendant has in no way admitted that plaintiff is the lessee of the premises he occupies. However, in the present case we reach the same conclusion as in *Ruiz*, due to the fact that although Pont Flores did not admit plaintiff to be the building's lessee, the evidence introduced by the latter proved it, that Soler was in possession of the entire building—including the premises formerly occupied by the Hotel—except the premises occupied by Pont Flores, and that defendant has not convinced us in any way that his possession is legal. Actually, in cases of this nature, the fundamental question for decision is whether or not defendant is in possession by virtue of any title which grants him the right to such possession. If he is not, as in this case, eviction lies.

In view of the foregoing conclusion it is unnecessary to discuss the other errors assigned by plaintiff.

The judgment appealed from must be reversed and another entered instead ordering the eviction.

Mr. Justice Negrón Fernández did not participate herein.